## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| RICK BJORKLUND, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.  08-CV-424-TCK-PJC |
| | ) | |
| (1) RANDI MILLER, individually and in | ) | |
| her official capacity as former Chairperson and | ) | |
| current Member of the Tulsa County Public | ) | |
| Facilities Authority; | ) | |
| (2) JOHN SMALIGO, Chairman of the | ) | |
| Tulsa County Public Facilities Authority; | ) | |
| (3) JAMES C. ORBISON, Vice-Chairman of | ) | |
| the Tulsa County Public Facilities Authority; | ) | |
| and | ) | |
| (4) FRED PERRY, Secretary of the Tulsa | ) | |
| County Public Facilities Authority; | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

Before the Court are Defendant Fred Perry's Motion to Dismiss (Doc. 9); Defendant Randi

Miller's Motion to Dismiss (Doc. 15); and Motion to Dismiss by Defendants John Smaligo and

James C. Orbison (Doc. 14).

### I.    Factual Background

The Tulsa County Public Facilities Authority ("TCPFA") is a public trust organized and

existing under the laws of Oklahoma for the purpose of managing activities occurring on the Tulsa

County Fairgrounds ("Fairgrounds").  At relevant times, Defendant Randi Miller ("Miller") was

Chairperson of the TCPFA; Defendant James Orbison ("Orbison") was Vice-Chairman of the

TCPFA; Defendant Fred Perry ("Perry") was Secretary of the TCPFA; and Defendant John Smaligo

("Smaligo") was a Member of the TCPFA (collectively "Defendants").[1]  Miller also held the position of Tulsa County Commissioner.  On January 1, 2007, Plaintiff Rick Bjorklund ("Plaintiff") entered into an Employment Agreement ("Agreement") with the TCPFA, whereby Plaintiff held the position of President and Chief Executive Officer.  The Agreement was executed by Plaintiff and Miller, as Chairperson of the TCPFA.  As part of his duties, Plaintiff managed the account of a business on the Fairgrounds known as Big Splash Water Park ("Big Splash").  On July 1, 2008, at a meeting of the TCPFA, Plaintiff was terminated by unanimous vote of the four TCPFA members present.

In his Complaint, Plaintiff asserted the following claims against all Defendants: (1) deprivation of a constitutionally protected property interest, in violation of 42 U.S.C. § 1983 ("§ 1983"); (2) deprivation of a constitutionally protected liberty interest, in violation of § 1983; and (3) breach of contract.  Plaintiff asserted the following additional claims against Miller: (1) defamation; (2) injurious falsehood; and (3) intentional infliction of emotional distress ("IIED"). The case caption of the Complaint states that Miller is sued "individually and in her official capacity" but does not specify as to the other three Defendants.  Defendants assumed, for purposes of their respective motions to dismiss, that Plaintiff sued them in their official and individual capacities.  Plaintiff offered no further explanation or clarification in his response briefs. Accordingly, unless otherwise stated herein, the Court has assumed all Defendants are sued in their individual and official capacities.  Perry, Smaligo, and Orbison moved to dismiss all claims asserted against them, in both their individual and official capacities, pursuant to Federal Rule of Civil

---

[1]  Throughout their motions, Defendants refer to themselves as "trustees" of the TCPFA. For purposes of this Opinion and Order, the Court refers to Defendants as "officers" or "members" of the TCPFA in order to be consistent with the Complaint.

Procedure 12(b)(6) ("Rule 12(b)(6)").  Miller also moved to dismiss all claims against her pursuant to Rule 12(b)(6), with the exception of the defamation claim asserted against her in an individual capacity.

## II.     Rule 12(b)(6) Standard

In considering a motion to dismiss under Rule 12(b)(6), a court must determine whether the plaintiff has stated a claim upon which relief may be granted.  The inquiry is "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'"  *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  In order to survive a Rule 12(b)(6) motion to dismiss, a plaintiff must "'nudge [ ] [his] claims across the line from conceivable to plausible.'"  *Schneider*, 493 F.3d at 1177 (quoting *Twombly*, 127 S. Ct. at 1974).  Thus, "the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims."  *Schneider*, 493 F.3d at 1177.  In conducting this inquiry, a court must "assume the truth of the plaintiff's well-pleaded factual allegations and view them in the light most favorable to the plaintiff." *Id.*; *see also Moffett v. Halliburton Energy Servs., Inc.*, 291 F.3d 1227, 1231 (10th Cir. 2002).  However, a court need not accept as true those allegations that are conclusory in nature. *Erikson v. Pawnee County Bd. of County Comm'rs*, 263 F.3d 1151, 1154-55 (10th Cir. 2001) (citations omitted).

## III.    § 1983 Claims

As explained above, Plaintiff has asserted two claims arising under § 1983 - one for deprivation of a constitutionally protected property interest and one for a constitutionally protected

3

liberty interest.  Both § 1983 claims are asserted against Defendants in their individual and official capacities.  To the extent the § 1983 claims are asserted against Defendants in their *individual* capacities, Defendants raised the defense of qualified immunity.  *See Beedle v. Wilson*, 422 F.3d 1059, 1069 (10th Cir. 2005) ("A qualified immunity defense is only available to parties sued in their individual capacity.").  "Under the doctrine of qualified immunity, government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Tonkovich v. Kansas Bd. of Regents*, 159 F.3d 504, 516 (10th Cir. 1998) (internal quotations omitted).  Relevant to Defendants' motions to dismiss, the first prong of qualified immunity requires a court to "determine whether the plaintiff has sufficiently alleged that the defendant violated a statutory or constitutional right." *Id.*

To the extent the § 1983 claims are asserted against them in their *official* capacities, Defendants argued that any relevant governmental entity which Defendants represent cannot be liable because Plaintiff's Complaint does not allege "an underlying constitutional violation" committed by any of the Defendants.  *See Hinton v. City of Elwood*, 997 F.2d 774, 782 (10th Cir. 1993) ("A [governmental entity] may not be held liable where there was no underlying constitutional violation by any of its officers.").  Thus, all of Defendants' arguments in support of dismissal of the § 1983 claims – whether they relate to the individual or official capacity claims – hinge on the question of whether Plaintiff has sufficiently alleged the violation of a constitutional right.

## A.    Deprivation of Property Interest

The Fourteenth Amendment protects citizens from the deprivation of "life, liberty, or property, without due process of law . . . ." U.S. Const. amend. XIV, § 1.  "[P]rocedural due process

4

ensures that a state will not deprive a person of life, liberty or property unless fair procedures are used in making that decision . . . ." *Archuleta v. Colo. Dep't of Insts., Div. of Youth Servs.*, 936 F.2d 483, 490 (10th Cir. 1991). In contrast, substantive due process "guarantees that the state will not deprive a person of those rights for an arbitrary reason regardless of how fair the procedures are that are used in making the decision." *Id.* Plaintiff's Complaint does not specify whether he is asserting a claim for violation of his right to procedural or substantive due process in connection with his termination. For purposes of their motions, Defendants assumed Plaintiff was asserting a procedural due process claim, and Plaintiff did not refute this assertion in his response. Accordingly, the Court construes Plaintiff's first claim as asserting a violation of his right to procedural due process.

"To determine whether a plaintiff was denied procedural due process, [a court] engage[s] in a two-step inquiry: (1) Did the individual possess a protected interest to which due process protection was applicable? (2) Was the individual afforded an appropriate level of process?" *Hennigh v. City of Shawnee*, 155 F.3d 1249, 1253 (10th Cir. 1998). Defendants do not dispute, for purposes of their motions to dismiss, that Plaintiff possessed a "protected interest" in his employment with TCPFA. Defendants contend that Plaintiff's allegations fail as to the second prong of the test – namely, "whether the individual was afforded an appropriate level of process prior to the deprivation of the protected interest." *Id.* at 1255-56.

When a public employee has a constitutionally protected property interest in his employment, deprivation of this property interest must be "preceded by notice and opportunity for hearing appropriate to the nature of the case." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (internal quotations omitted). "This principle requires 'some kind of a hearing' prior to the discharge." *Id.* A pre-termination hearing is required because "some opportunity for the employee

5

to present his side of the case is recurringly of obvious value in reaching an accurate decision." *Id.* at 543.  However, the Supreme Court has also stated that "the pretermination 'hearing,' though necessary, need not be elaborate." *Id.* at 545.  "[T]he formality and procedural requisites for the hearing can vary, depending upon the importance of the interests involved and the nature of the subsequent proceedings." *Id.* (internal quotations omitted).  Although "'something less' than a full evidentiary hearing is sufficient prior to adverse administrative action," the Supreme Court has indicated that "[t]he essential requirements of due process . . . are notice and an opportunity to respond" and "[t]he opportunity to present reasons, either in person or in writing, why proposed action should not be taken." *Id.* at 546; *see also Hennigh*, 155 F.3d at 1256 ("The Due Process Clause . . . entitles each citizen to notice and an opportunity to be heard prior to the deprivation of a fundamental right.").  "To require more than this prior to termination would intrude to an unwarranted extent on the government's interest in quickly removing an unsatisfactory employee." *Loudermill*,  470 U.S. at 546.[2]

In the specific context of a motion to dismiss, the question is whether the factual allegations in the Complaint regarding the pre-termination process reveal that Plaintiff was indeed afforded adequate process.  *See Lee v. Regents of Univ. of Cal.*, 221 Fed. Appx. 711, 713-15 (10th Cir. 2007) (unpublished) (explaining that district court properly dismissed case where plaintiff "affirmatively

---

[2]  Beyond the guidelines set forth in *Loudermill*, the Tenth Circuit has further indicated that "[a] fundamental principle of procedural due process is a hearing before an impartial tribunal" and that "[a] tribunal is not impartial if it is biased with respect to the factual issues to be decided at the hearing."  *Tonkovich*, 159 F.3d at 518.

pled that he was afforded notice and an opportunity to be heard").[3]  All relevant allegations in the

Complaint regarding the pre-termination process are set forth below:

> On July 1, 2008, [TCPFA] held a meeting, the minutes and transactions of which were duly recorded.  On July 1, 2008, during the aforementioned meeting, [TCPFA] moved from a regular open session to a closed 'executive session' in which they discussed the future employment of [Plaintiff], in relation to the [Big Splash] account, and requested the resignation of [Plaintiff] due to the alleged mishandling of the Big Splash account.   During the closed 'executive session,' [Plaintiff] reminded County Commissioner Miller of her specific direction to immediately remove the Big Splash debts, 'off the radar screen,' said direction occurring during the time that Commissioner [Miller] was Chairperson of the [TCPFA].   After requesting [Plaintiff's] resignation and his absolute refusal to do so, the [TCPFA] subsequently returned to their regular open session, at which time [Miller] moved to terminate Plaintiff, effective immediately.   The four present [TCPFA] members present voted 'yes' to the termination, one member was absent.   The meeting was then adjourned.

(Compl. ¶¶ 16-18.)

Plaintiff's allegations are sufficient to survive a motion to dismiss.  With respect to the issue

of "notice," the Complaint does not make evident that Plaintiff received adequate notice of either

(1) the charges against him, or (2) that his employment status would be addressed at the July 1, 2008

meeting.  Instead, construed in its most favorable light, the Complaint indicates that Plaintiff first

became aware that he may be terminated at some point during the July 1, 2008 meeting. The

Complaint does not allege that Plaintiff's employment status was an agenda item printed in advance

of the July meeting or that he was otherwise made aware of the need to make preparations to defend

---

[3]  Plaintiff has not alleged that he requested, but was denied, a post-termination hearing. Therefore, Plaintiff waived any right to argue that Defendants violated his right to procedural due process based on Defendants' post-termination actions or lack thereof.  *See Lee*, 221 Fed. Appx. at 714 (affirming district court's conclusion that plaintiff waived any challenge to post-termination hearing procedures by failing to allege that he requested a post-termination hearing).

his job.  Plaintiff has therefore not affirmatively pled that he received adequate notice of the charges against him and the possibility of his termination.

With respect to an "opportunity to present his side of the case," Plaintiff was present during the closed executive session and appears to have been given at least some opportunity to defend the charges against him – namely, mishandling of the Big Splash account.  This is evidenced by the allegation that Plaintiff informed TCPFA members, during the executive session, that any alleged mishandling of the Big Splash account was the result of Miller's instruction.  However, Plaintiff also alleges he was immediately given the opportunity to resign, indicating that the executive session may have been less like a fact-finding hearing and more like a session scheduled to inform Plaintiff of a decision already made.  Accepted as true, Plaintiff's allegations are sufficient to "'nudge [ ] [his] claim[] across the line from conceivable to plausible'" and "give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support" for his claim of inadequate due process in connection with his termination.  *Schneider*, 493 F.3d at 1177 (quoting *Twombly*, 127 S. Ct. at 1974).

In *Lee*, the only case cited by Defendants wherein a court dismissed based on insufficiency of the complaint, the complaint's allegations established that: (1) the plaintiff was accused of misconduct by a fellow employee in April 2002; (2) the employer conducted an investigation of the plaintiff's alleged misconduct, during which the employer conducted two pre-termination interviews of the plaintiff; (3) during these interviews, the plaintiff had the opportunity to defend the charges against him; (4) the plaintiff was suspended and formally reprimanded for various infractions; and (5) the plaintiff was terminated six months following the initial accusation, in November 2002.  *See Lee,* 221 Fed. App'x at 713-14.  *Lee* is distinguishable because the complaint in *Lee* more clearly

8

evidenced that the plaintiff received notice and an opportunity to be heard prior to his termination. The Court cannot, as urged by Defendants, rely on *Lee* to conclude that Plaintiff's allegations in this case affirmatively pled the existence of adequate process.

### B.      Deprivation of Liberty Interest

In his second cause of action, Plaintiff alleges deprivation of a liberty interest protected by the Fourteenth Amendment – namely, the right to a name-clearing hearing following stigmatizing statements made by a public official acting under color of law.  (*See* Compl. ¶¶ 28-29.)  In the context of public employment, the United States Supreme Court has held that a liberty interest may arise when a person's "good name, reputation, honor, or integrity" is at stake.  *See Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 573 (1972).  Interpreting *Roth* and its progeny, the Tenth Circuit stated:

> Putting these cases together, we can construct the parameters of a liberty interest case involving the discharge of a public employee.  When a public employee takes action to terminate an employee based upon a public statement of unfounded charges of dishonesty or immorality that might seriously damage the employee's standing or associations in the community and foreclose the employee's freedom to take advantage of future employment opportunities, a claim for relief is created.

*Melton v. City of Okla. City*, 928 F.2d 920, 927 (10th Cir. 1991).  Tenth Circuit cases subsequent to *Melton* have interpreted this statement in *Melton* to create a four-part test ("*Workman* test"):

> In order to demonstrate the infringement of a liberty interest in one's good name, one must show that: (1) the defendant made a statement impugning his or her good name, reputation, honor, or integrity; (2) the statement was false; (3) the defendant made the statement in the course of termination proceedings or the statement foreclosed future employment opportunities;[4] and (4) the statement was published.

---

[4] As explained below, the third element of the *Workman* test has since been modified by the Tenth Circuit.

*Tonkovich v. Kansas Bd. Of Regents*, 159 F.3d 504, 526 (10th Cir. 1998) (emphasis added);

*Workman v. Jordan*, 32 F.3d 475, 481 (10th Cir. 1994).  If a plaintiff can establish these elements,

a defendant has infringed a plaintiff's procedural due process rights if it failed to provide a "name-

clearing hearing."  *See Roth*, 408 U.S. at 573 n.12 (stating that, where a liberty interest is implicated,

due process requires notice and a hearing to "provide the person an opportunity to clear his name");

*Tonkovich*, 159 F.3d at 526 (holding no constitutional violation may occur if a procedurally proper

name-clearing hearing is provided).[5]

Defendants make three arguments in support of dismissal, each of which are addressed

below: (1) Plaintiff's allegations fail to state a claim for the first element of the *Workman* test; (2)

Plaintiff's allegations fail to state a claim for the third element of the *Workman* test; and (3) certain

relevant statements by Miller were not made "under color of law" but were instead made in a private

capacity.[6]

1.      *First Element - Defendant Made Statement Impugning Good Name, Reputation, Honor, or Integrity*

The Complaint alleges as follows regarding allegedly stigmatizing statements:

Following the termination of [Plaintiff], [Miller] publicly stated, that [Plaintiff] was 'lying' when he divulged that [Miller] had specifically directed him, in her official capacity as [TCPFA] Chairperson and County Commissioner, to get the Big Splash money matter 'off the radar screen.'
. . .

---

[5]  The purpose of a name-clearing hearing is not to determine whether the charges were an adequate reason for termination or whether a plaintiff should be reinstated to his position; instead, the purpose of the hearing is to allow a plaintiff to clear his name and show that the accusations were false.  *See DeFries v. Town of Washington, Okla.*, 875 F. Supp. 756, 765 (W.D. Okla. 1995).

[6]  It is undisputed that Defendants did not provide Plaintiff with a name-clearing hearing or any other formal process following his termination.

Defendants' termination of [Plaintiff] under the auspices of mismanagement and [Miller's] characterizations of [Plaintiff] as a 'liar' and as a Chief Executive Officer who, if in fact, mishandles and mismanages money creates a significant stigma that forecloses his freedom to take advantage of other similar employment opportunities. . . .

[Miller] . . . did make false and malicious statements that [Plaintiff] . . . did knowingly and intentionally withhold and mismanage funds received for the purpose of a rental agreement, without consent of the [TCPFA].  [Miller] . . . did knowingly and recklessly make false allegations regarding professional impropriety and misconduct against [Plaintiff]. . . .  [Miller] disseminated the defamatory statements described above to third parties, by making such injurious and defamatory statements in the media and on camera. . . .  The malicious and untruthful comments, statements, and information regarding the alleged conduct of [Plaintiff] were designed and calculated to injure, or otherwise leave an impression upon the listener that [Plaintiff] was guilty of some type of fraudulent, criminal or other egregious behavior . . . .

(Compl. ¶¶ 19, 28, 32-36.)

As an initial matter, there is nothing in the Complaint alleging that Smaligo, Orbison, or Perry made any relevant statements whatsoever, either in their official or individual capacities. Accordingly, Plaintiff has failed to state a claim against Smaligo, Orbison, or Perry for deprivation of a constitutionally protected liberty interest.  The Complaint does allege that Miller made public statements regarding Plaintiff.  The Complaint essentially alleges two types of defamatory statements: (1) Miller's statements that Plaintiff lied about Miller directing him to get the Big Splash money "off the radar screen" ("Liar Statements"); and (2) Miller's statements that Plaintiff "mishandled," "withheld," and/or "mismanaged" TCPFA funds ("Funds Statements").  The question related to the first element of the *Workman* test is whether Miller's statements are sufficient to impugn Plaintiff's good name, reputation, honor, or integrity.

a.    Liar Statements

Plaintiff's allegations regarding the Liar Statements are sufficient to survive a motion to dismiss because calling someone a "liar" potentially implicates his honor and integrity.  In this case,

11

by calling Plaintiff a liar, Miller accused Plaintiff of wrongfully blaming his former employer for directing him to take actions that led to his termination.  This type of statement could certainly impugn Plaintiff's reputation for honesty.

b.    Funds Statements

The Funds Statements present a closer question because the Tenth Circuit has held that public statements regarding an employee's "mismanagement" of money are distinguishable from statements regarding an employee's "stealing" money.  *See Rusillo v. Scarborough*, 935 F.2d 1167, 1172 (10th Cir. 1991) (affirming grant of summary judgment in favor of employer where relevant article "may have implied" that the plaintiff "was fired for mismanagement but did not suggest he actually stole the money").  In contrast to stealing money, mismanaging money is "not equivalent to dishonesty or immorality that might seriously damage an employee's standing in the community." *Id.* (internal quotations and alterations omitted).

Plaintiff has alleged sufficient facts to survive a motion to dismiss because, in addition to using the word "mismanaged" in his Complaint to describe Miller's comments, Plaintiff also used the words "withheld" and "mishandled."  Unlike mere mismanagement, which implies negligence, the words "mishandled" and "withheld" connote a degree of intentional wrongfulness that are more likely to impact one's reputation for honesty.  In addition, Plaintiff alleged that Miller's statements left an impression of "fraudulent" or "criminal" behavior with the public, indicating that the Funds Statements went beyond mere allegations of mismanagement or poor job performance.  Accordingly, Plaintiff has a "reasonable likelihood of mustering factual support" for his assertion that the Funds Statements went beyond allegations of mismanagement and somehow implicated Plaintiff's reputation for honesty.  *Schneider*, 493 F.3d at 1177.

12

2.     *Third Element - Made in the Course of Termination Proceedings*

As set forth above, the third element is stated in Tenth Circuit law as whether "the defendant made the statement in the course of termination proceedings *or* the statement foreclosed future employment opportunities." *Tonkovich*, 159 F.3d at 526 (emphasis added).  However, the Tenth Circuit has substantially modified this element:

> Under the test formulated in *Workman*, the defamatory statements "must occur in the course of terminating the employee *or must foreclose other employment opportunities*" (emphasis added). At first blush, it appears that this prong of the test can be met either by statements made in the course of terminating an employee or, in the alternative, by any other statements that might foreclose other employment opportunities. *Workman*, which was decided on other grounds, did not examine this question. In delineating this prong of the test, *Workman* cited *Paul*, 424 U.S. at 710, 96 S.Ct. 1155, and *Sullivan v. Stark*, 808 F.2d 737, 739 (10th Cir.1987). As explained in the foregoing analysis, *Paul* clearly requires that the defamation occur in the course of the termination of employment. *Sullivan* did not abrogate or minimize this requirement. While the language of *Workman* may be susceptible to another reading, we conclude that the *Workman* court did not intend to create a test under which a liberty interest might be infringed by any defamatory statement that might foreclose future employment opportunities.

*Renaud v., Wyo. Dep't of Human Svcs.*, 203 F.3d 723, 728 n.1 (10th Cir. 2000).  Therefore, despite use of the word "or" in the third element of the *Workman* test, a plaintiff must establish that any alleged defamatory statements were made in the course of the termination proceedings.  *See Stidham v. Peace Officer Standards and Training*, 265 F.3d 1144, 1154 (10th Cir. 2001) (holding that plaintiff did not adequately allege violation of a liberty interest because written defamatory statement to prospective employer that foreclosed future employment opportunities occurred after termination, and plaintiff was therefore not terminated "incident to" the alleged defamation).

"[A] court must examine both the nature and the timing of an allegedly defamatory statement to determine whether it has been made in the course of an employee's termination." *Renaud*, 203 F.3d at 727.  Although "[t]iming is certainly one consideration in determining whether stigmatizing

13

statements are made in the course of the termination of employment," the defamatory statements "need not be strictly contemporaneous with a termination to occur in the course of the termination of employment." *Id.* Instead, the Tenth Circuit endorses a "common-sense" approach whereby a court considers both the nature of the alleged defamation and when the statement was made in relation to the termination. *Id.* Statements regarding matters other than the reasons for termination, even if they occur roughly contemporaneously to the termination, are not relevant. *Id.* "What is relevant to [the] analysis is the manner in which a public employee is terminated, and statements made incident to the termination." *Id.* (internal quotations and citation omitted).

a.    <u>Liar Statements</u>

The Complaint alleges that the Liar Statements were made "following" Plaintiff's termination but does not allege facts regarding how soon following termination. Drawing reasonable inferences from the Complaint, it would appear that Plaintiff made public statements of his own in response to his termination, attributing the alleged mishandling of the Big Splash account (the alleged reason given for termination) to Miller's instructions. Then, in response to these accusations, Miller allegedly called Plaintiff a liar. Miller argues that the Liar Statements were not related to the termination in any way because Plaintiff was not terminated for being a "liar"; he was terminated for mishandling funds.

Contrary to Miller's arguments, the Court finds that Plaintiff's allegations are sufficient to survive a motion to dismiss because the Liar Statements directly relate to Plaintiff's termination. The termination was allegedly based on his mishandling of the Big Splash account. Whether Plaintiff "lied" about Miller instructing him to take certain actions related to the Big Splash account relates to Plaintiff's defense to the charges forming the basis of his termination. Thus, in the Court's view,

14

the Liar Statements relate directly to the reasons for termination.  In *Renaud*, a case relied upon by Miller, the statements had no real bearing on the original reasons given for the plaintiff's termination.  *Renaud*, 203 F.3d at 727-28 (affirming grant of summary judgment because alleged defamation regarding a plaintiff being dangerous and potentially suicidal after his discharge from alcohol rehabilitation "had nothing to do with the reasons for termination," which were abusing alcohol on the job, and also had no "bearing on the manner of termination," which occurred privately by certified letter).  Although the Complaint is silent as to the precise timing of the Liar Statements, it is reasonable to infer that this public "back and forth" between Plaintiff and Miller regarding the validity of the reason given for his termination occurred quickly after the termination. Again, applying the motion to dismiss standard, Plaintiff has alleged facts that "nudge" his assertion that the Liar Statements occurred during the course of termination proceedings from conceivable to plausible.

b.    <u>Funds Statements</u>

The Complaint, viewed in its most favorable light, alleges that at least some of the Funds Statements were made during a public portion of the July 1, 2008 meeting.  (*See* Compl. ¶ 28 ("Defendants' termination of [Plaintiff] under the auspices of mismanagement . . . creates a significant stigma that forecloses his freedom to take advantage of other similar employment opportunities.").)  If made, these statements would clearly be considered in the course of termination proceedings.  In addition, for similar reasons explained above, the Court finds that any Funds Statements made by Miller following Plaintiff's termination are sufficiently connected in nature and time to the termination proceedings to satisfy the third element, at least for purposes of a motion to dismiss.

3.      *Under Color of State Law*

As her final argument, Miller contends that, even assuming the Liar Statements satisfy the first and third element of the *Workman* test, they are not actionable under § 1983 because they were not made "under color of state law."[7] Specifically, Miller argues that "[n]owhere does the complaint identify facts demonstrating a nexus between the [Liar Statements] and her state-derived authority as a trustee of the TCPFA" and that "the complaint indicates at best that [the Liar Statements were] made to the media in response to accusations that Plaintiff had leveled against Miller in the aftermath of his termination."  (Miller's Mot. to Dismiss 12.)

"To state a claim under § 1983, a plaintiff must allege that the claimed deprivation was committed by a person acting under color of state law." *Haines v. Fisher*, 82 F.3d 1503, 1508 (10th Cir. 1996).  "The under color of state law requirement is a jurisdictional requisite for a § 1983 action." *Jojola v. Chavez*, 55 F.3d 488, 492 (10th Cir. 1995) (internal quotations omitted).  While acknowledging that distinguishing between purely private conduct and governmental conduct can be a difficult task, the Tenth Circuit outlined "some parameters from existing law." *See id.*  In the public employment context, which is relevant to this case, "state employment is generally sufficient to render the defendant a state actor." *Id.* at 493 (internal quotation omitted). "[M]any tortious acts committed by state employees will occur in the performance of the employee's official duties,"  and such actions are taken under color of law regardless of whether the state employee oversteps his line of authority.  *Id.*  However, this "general rule" does not apply to purely private acts that are not

_____

[7] Miller did not argue that the Funds Statements were not made under color of state law. Instead, Miller's principal argument regarding the Funds Statements was that such statements did not impugn Plaintiff's honesty or integrity and therefore did not state a claim for the first element of the *Workman* test.

16

"committed on account of the authority vested in the employee by the state." *Id.* Applying these principles, the Tenth Circuit stated that "it is the plaintiff's burden to plead, and ultimately establish, the existence of 'a real nexus' between the defendant's conduct and the defendant's 'badge' of state authority in order to demonstrate action was taken 'under color of state law.'" *Id.* at 494.

Plaintiff has pled sufficient facts to support a claim that, when Miller made the Liar Statements, she did so in performance of her official duties and under the "badge" of her official authority, rather than as a purely private citizen. As explained above, the Complaint describes a media battle between Plaintiff and Miller following Plaintiff's termination from employment with the TCPFA, whereby Plaintiff accused Miller of terminating him for taking actions related to the Big Splash account when she herself had directed such actions, and Miller responded by calling him a liar. Although Plaintiff does not explicitly allege that, in making the public statements, Miller spoke in an official capacity or on behalf of the TCPFA, the Court finds "reason to believe that this plaintiff has a reasonable likelihood of mustering factual support" for his assertion that Miller was acting under color of law when making the Liar Statements.[8]

---

[8] The Tenth Circuit cases cited or located by the Court in which a complaint was properly dismissed on grounds that a state employee's tort was "purely private" involved drastically different facts than those presented here. *See, e.g., Jojola*, 55 F.3d at 494 (affirming dismissal where complaint failed to allege that state-employed janitor who allegedly molested the plaintiff possessed state authority or misused state authority to entice the plaintiff into the classroom where she was molested); *Beedle*, 422 F.3d at 1075 (affirming dismissal where complaint failed to allege that state-employed nurse's aide who allegedly molested patient used her state authority to "enable her to carry out the alleged assault" such as, for example, by sedating her). The case cited by Miller in support of dismissal is not overly helpful at this stage of the proceedings because it examined the sufficiency of trial evidence and not the sufficiency of a complaint. *See Corbitt v. Anderson*, 778 F.2d 1471, 1475 (10th Cir. 1985) (affirming jury verdict on issue of "color of state law" where director of publicly funded counseling service made disparaging statements about the plaintiff on political subdivisions' letterhead and signed statement in his capacity as the director). The Court is without a similarly developed factual record at this stage of the proceedings.

17

IV.     **Breach of Contract**

Plaintiff alleges that Defendants' conduct constitutes a breach of the Agreement.  Defendants argue that Plaintiff has failed to state a claim for breach of the Agreement because no named Defendant is a party to the Agreement.  Instead, TCPFA, which is not a named party in this lawsuit, entered into the Agreement with Plaintiff.  Plaintiff has not responded to this argument in any meaningful way or cited case law supporting its position that Defendants can be held liable, as individuals or in their official capacities, for breach of the Agreement.

The Court concludes that, to the extent Defendants are sued for breach of contract in their official capacities as TCPFA members, the Eleventh Amendment provides absolute immunity from suit.  *See Garcia v. Lemaster*, 439 F.3d 1215, 1219 n.7 (10th Cir. 2006) ("[T]he Eleventh Amendment provides absolute immunity in federal court to state officials for suits alleging breach of contract under state law.").  To the extent Defendants are sued individually, the claim fails because no individual Defendant is a party to the Agreement.  *See Digital Design Group, Inc. v. Info. Builders*, 24 P.3d 834, 843 (Okla. 2001) (element of breach of contract claim is that contract was formed between the plaintiff and defendant).  Accordingly, Plaintiff has failed to state a claim for breach of contract against any Defendant.

V.     **State Law Torts Against Miller - Official Capacity**

Plaintiff asserts "official capacity" claims against Miller for defamation and injurious falsehood.  (*See* Compl. ¶¶ 32, 40.)  Plaintiff alleges that Miller, in committing these torts, acted with malice.  (*See* Compl. ¶¶ 32, 33, 36, 40, 41, 44.)  Because Plaintiff alleges malicious conduct, Miller was necessarily acting outside the scope of employment when she allegedly committed such torts.  *See Pellegrino v. State of Okla. ex rel. Cameron Univ.*, 63 P.3d 535, 537 (Okla. 2003) ("An

18

act of the employee is not in the scope of employment if the employee acted maliciously or in bad faith."). Because she was allegedly acting with malice and therefore outside the scope of employment, the defamation and injurious falsehood claims may not be asserted against Miller in her official capacity. *See id.* ("[A] tort claim brought against an employee in his or her official capacity [i]s an attempt to impose liability upon the governmental entity, and thus the claim must be based upon the employee having acted within the scope of his or her employment."). This is because "when an employee acts outside the scope of employment the political subdivision is relieved from liability." *Id.* Accordingly, Plaintiff has failed to state any "official capacity" tort claims against Miller.[9]

## VI. State Law Torts Against Miller - Individual Capacity

Plaintiff asserts "individual capacity" tort claims against Miller for defamation, injurious falsehood, and IIED. Miller moved for dismissal of the injurious falsehood and IIED claims, arguing that they fail to state claim.

### A. Injurious Falsehood

The Oklahoma Supreme Court has never defined, recognized, or specifically set forth the elements of a cause of action for "injurious falsehood." As a general matter, an action for injurious falsehood "applies to cases of disparagement of property in land, chattels or intangible things or of their quality." *Sunlight Saunas, Inc. v. Sundance Sauna, Inc.*, 427 F. Supp. 2d 1032, 1073 (D. Kan. 2006) (citing Restatement (Second) of Torts § 623A). Even assuming Oklahoma were to recognize

---

[9] Plaintiff does not appear to assert an "official capacity" claim against Miller for IIED. To the extent he does, such claim would be barred because the tort of IIED includes the element of bad faith. *See McMullen v. City of Del City*, 920 P.2d 528, 531 (Okla. Civ. App. 1996) ("There is no way to prove a claim for outrage if the defendant has acted in good faith."). It is therefore also necessarily outside the scope of her county employment.

19

a cause of action for injurious falsehood, there are no allegations involving disparagement of property, chattel, or other intangible items. Instead, the alleged disparagement is to Plaintiff's person and reputation, and the proper cause of action is one for defamation. This is evidenced by the fact that the allegations underlying Plaintiff's claims for defamation and injurious falsehood are nearly identical. In short, the Court finds no legal basis or factual reason to proceed with the "injurious falsehood" cause of action in light of the clearly established and more applicable cause of action for defamation.

### B.   IIED

"To recover damages for intentional infliction of emotional distress, a plaintiff must prove: (1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; (3) the defendant's conduct caused the plaintiff emotional distress; and (4) the resulting emotional distress was severe." *Computer Publ'ns v. Welton*, 49 P.3d 732, 735 (Okla. 2002). "The trial court acts as a gatekeeper regarding the outrageousness of the defendant's conduct and the severity of the plaintiff's distress." *Id.* The roles of the court and jury are defined as follows:

> The court, in the first instance, must determine whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery or whether it is necessarily so. Where, under the facts before the court, reasonable persons may differ, it is for the jury, subject to the control of the court, to determine whether the conduct in any given case has been significantly extreme and outrageous to result in liability. Likewise, it is for the court to determine, in the first instance, whether based upon the evidence presented, severe emotional distress can be found. It is for the jury to determine whether, on the evidence, severe emotional distress in fact existed.

*Breeden v. League Services Corp.*, 575 P.2d 1374, 1377-78 (Okla. 1978) (footnotes omitted). "The trial court's gatekeeper role with regard to the second and fourth elements of the tort of intentional infliction of emotional distress ensures that only valid claims reach the jury under the appropriate

legal standards." *Welton*, 49 P.3d at 735. "Liability for the tort has only been found where the offending conduct has so totally and completely exceeded the bounds of acceptable social interaction that the law must provide redress." *Warren v. United States Specialty Sports Ass'n*, 138 P.3d 580, 585 (Okla. Civ. App. 2006) (internal quotations omitted). "Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities"; instead, the tort of IIED requires an "[e]xtraordinary transgression of the bounds of civility." *Id.* (internal quotations omitted).

Plaintiff's allegations are sufficient to survive a motion to dismiss. Miller characterizes her alleged conduct as merely stating that Plaintiff: "(1) mismanaged funds as CEO of TCPFA and (2) lied when making public statements about Plaintiff." (*See* Miller's Mot. to Dismiss 18.)  However, the Court finds that, construed in their most favorable light, Plaintiff's allegations are that Miller: (1) directed him to take certain actions with respect to the Big Splash account; (2) publically terminated him for the very actions she directed him to take regarding the Big Splash account; and (3) publically called him a liar when he informed the media that he was fired for actions that Miller directed him to take.  These allegations go beyond mere insults or indignities and at least arguably implicate a scheme whereby Miller accused and terminated Plaintiff for alleged wrongdoing, when she herself directed him to take the allegedly wrongful actions.  A more developed factual record will certainly shed light on the details surrounding the dispute between Miller and Plaintiff and inform the Court whether this claim should reach a jury.  However, the allegations are sufficient to survive a motion to dismiss.

Defendants Fred Perry's Motion to Dismiss (Doc. 9) is GRANTED in part and DENIED in part; Defendant Randi Miller's Motion to Dismiss (Doc. 15) is GRANTED in part and DENIED in

part; and Motion to Dismiss by Defendants John Smaligo and James C. Orbison (Doc. 14) is GRANTED in part and DENIED in part.  Specifically, (1) Plaintiff's § 1983 claim for deprivation of a constitutionally protected property interest may proceed against all Defendants in their individual and official capacities; (2) Plaintiff's § 1983 claim for deprivation of a constitutionally protected liberty interest may proceed against Miller in her individual and official capacities but is dismissed as to Perry, Smaligo, and Orbison; (3) Plaintiff's defamation claim may proceed against Miller in her individual capacity only; (4) Plaintiff's injurious falsehood claim is dismissed; (5) Plaintiff's breach of contract claim is dismissed; and (6) Plaintiff's IIED claim may proceed against Miller in her individual capacity only.

ORDERED this 3rd day of September, 2009.

**TERENCE KERN**
**UNITED STATES DISTRICT JUDGE**