# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **RICK BJORKLUND,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | No. 08-CV-424-TCK-PJC |
| ) | |
| (1) **RANDI MILLER**, individually and in ) | |
| her official capacity as former Chairperson and ) | |
| current Member of the Tulsa County Public ) | |
| Facilities Authority; ) | |
| (2) **JOHN SMALIGO**, Chairman of the ) | |
| Tulsa County Public Facilities Authority; ) | |
| (3) **JAMES C. ORBISON**, Vice-Chairman of ) | |
| the Tulsa County Public Facilities Authority; ) | |
| and ) | |
| (4) **FRED PERRY**, Secretary of the Tulsa ) | |
| County Public Facilities Authority; ) | |
| ) | |
| **Defendants.** ) | |

## OPINION AND ORDER

Before the Court is Plaintiff's Application to Amend Complaint (Doc. 25).

**I.    Factual Background[1]**

The Tulsa County Public Facilities Authority ("TCPFA") is a public trust organized and existing under the laws of Oklahoma for the purpose of managing activities occurring on the Tulsa County Fairgrounds. On January 1, 2007, Plaintiff Rick Bjorklund ("Plaintiff") entered into an Employment Agreement ("Agreement") with the TCPFA, whereby Plaintiff held the position of President and Chief Executive Officer. The Agreement was executed by Plaintiff and Defendant

---

[1] For a more complete factual background, see 9/3/09 Opinion and Order (Doc. 24).

Miller ("Miller"), as Chairperson of the TCPFA. On July 1, 2008, at a meeting of the TCPFA, Plaintiff was terminated by unanimous vote of the four TCPFA members present.

On July 22, 2008, Plaintiff filed a Complaint asserting the following claims against all Defendants: (1) deprivation of a constitutionally protected property interest, in violation of 42 U.S.C. § 1983 ("§ 1983"); (2) deprivation of a constitutionally protected liberty interest, in violation of § 1983; and (3) breach of contract. Plaintiff asserted the following additional claims against Miller: (1) defamation; (2) injurious falsehood; and (3) intentional infliction of emotional distress ("IIED"). Plaintiff did not sue the TCPFA. In September 2008, Defendants filed motions to dismiss. Because the motions raised qualified immunity defenses, the Court stayed discovery pending ruling on the motions. The Court ordered the parties to file a Joint Status Report within ten days of the Court's rulings on the motions to dismiss.

On September 3, 2009, the Court granted in part and denied in part various motions to dismiss filed by Defendants. Specifically, the Court ordered that: (1) Plaintiff's § 1983 claim for deprivation of a constitutionally protected property interest may proceed against all Defendants in their individual and official capacities; (2) Plaintiff's § 1983 claim for deprivation of a constitutionally protected liberty interest may proceed against Miller in her individual and official capacities but is dismissed as to Defendants Fred Perry, John Smaligo, and James Orbison; (3) Plaintiff's defamation claim may proceed against Miller in her individual capacity only; (4) Plaintiff's injurious falsehood claim is dismissed; (5) Plaintiff's breach of contract claim is dismissed; and (6) Plaintiff's IIED claim may proceed against Miller in her individual capacity only. With respect to the breach of contract claim, the Court dismissed the claim because no named Defendant was a party to the Agreement; the relevant party to the Agreement is TCPFA.

The parties failed to comply with the Court's order to file a Joint Status Report ten days following the Court's ruling on the motions to dismiss. Accordingly, no schedule has been set. On September 11, 2009, Plaintiff moved to amend his Complaint to add TCPFA as a defendant on the breach of contract claim.

## II.    Motion to Amend

Pursuant to Federal Rule of Civil Procedure 15(a)(2), a court should "freely give leave when justice so requires." District courts have wide discretion to allow amendment "in the interest of a just, fair or early resolution of litigation." *Bylin v. Billings*, 568 F.3d 1224, 1229 (10th Cir. 2009). District courts generally deny leave to amend only on "a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Duncan v. Manager, Dep't of Safety*, *City, and County of Denver*, 397 F.3d 1300, 1315 (10th Cir. 2005) (internal quotation omitted). "In the Tenth Circuit, untimeliness alone is an adequate reason to refuse leave to amend." *Id.* Defendants assert that leave to amend should be denied due to untimeliness of the motion.

The timeliness issue presented under Rule 15(a) is whether Plaintiff's delay in seeking amendment was "undue." *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1205 (10th Cir. 2006) (explaining that "[e]mphasis is on the adjective" in the "undue delay" analysis). According to the Tenth Circuit, "[t]he longer the delay, the more likely the motion to amend will be denied, as protracted delay, with its attendant burdens on the opponent and the court, is itself a sufficient reason for the court to withhold permission to amend." *Id.* (internal quotation omitted). In determining whether a delay is "undue," the Tenth Circuit "focuses primarily on the reasons for the delay." *Id.* at 1206. "[D]enial of leave to amend is appropriate when the party filing the motion has no adequate

3

explanation for the delay" or when a moving party fails to "demonstrate excusable neglect." *Id.* (citing *Fed. Ins. Co. v. Gates Learjet Corp.*, 823 F.2d 383, 387 (10th Cir. 1987)). In addition, a court may properly deny leave to amend where the plaintiff is using Rule 15 to: (1) make the complaint a moving target; (2) salvage a lost case by untimely suggestion of new theories of recovery; (3) present numerous new theories in an effort to avoid dismissal; or (4) knowingly delay raising an issue until the eve of trial. *See Minter*, 451 F.3d at 1206.

The Court finds that Plaintiff's delay in seeking amendment was "undue" for purposes of Rule 15(a) because Plaintiff has offered no explanation whatsoever for the delay, let alone an "adequate" explanation. The Agreement has been in Plaintiff's possession since the outset of the case in July 2008. The Agreement is clearly between Plaintiff and TCPFA, and there is no reason that Plaintiff could not have previously ascertained that TCPFA was the proper party to a claim for breach of the Agreement. Further, if there was any confusion, Plaintiff received notice of the flaws in his pleading upon receipt of Defendants' motions to dismiss, all of which argued that TCPFA, and not the individual Defendants, was the proper party to a claim for breach of the Agreement. Instead of moving to amend at that time, however, Plaintiff waited until the Court ruled and dismissed the breach of contract claim altogether. In this situation, namely – (1) where the facts plainly suggested that TCPFA should be a party to the breach of contract claim; (2) where Defendants' motions to dismiss clearly raised the issue of the TCPFA being the proper party to the breach of contract claim; (3) where Plaintiff failed to move to amend prior to the Court's dismissal of the claim; and (4) where Plaintiff has offered no explanation for the delay in seeking amendment – the Court finds that the motion to amend is untimely. In addition, Plaintiff's motion to amend is a late attempt to "salvage" the breach of contract claim after the Court's dismissal of such claim.

4

Accordingly, Plaintiff's Application to Amend Complaint (Doc. 25) is DENIED. The parties are ORDERED to file a Joint Status Report no later than seven days from the date of this Order.

ORDERED this 19th day of November, 2009.

_____
**TERENCE KERN**
**UNITED STATES DISTRICT JUDGE**