IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| RICK BJORKLUND, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 08-CV-424-TCK-PJC |
| | ) | |
| RANDI MILLER, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## OPINION AND ORDER

Before the Court is Defendants' Motion to Compel [Dkt. No. 58].  Defendants

seek to compel non-party Clark Brewster ("Brewster") to answer certain questions

posed at his deposition concerning Brewster's communications with Plaintiff Rick

Bjorklund ("Bjorklund").  For the reasons set forth below, the motion is **GRANTED**.

Bjorklund was Chief Executive Officer of the Tulsa County Public Facilities

Authority ("TCPFA") from January 2007 until his termination on July 1, 2008.  Brewster

was a board member of the TCPFA in 2006-07.  The TCPFA hired Bjorklund and

oversaw his job performance.

Bjorklund contends that Brewster was his attorney during 2006-08.  The issue

before the Court concerns communication between Brewster and Bjorklund on or about

July 1, 2008, concerning Bjorklund's job termination.  Bjorklund claims that he consulted

Brewster on July 1, 2008, about his possible termination and asserts that Brewster

cannot testify about those communications because they fall within the attorney-client privilege.  Brewster has denied he was ever Bjorklund's attorney.

*Background*

Bjoklund has sued certain past and current board members of the TCPFA for violation of his civil rights under 42 U.S.C. § 1983, defamation, breach of contract and intentional infliction of emotional distress.  Brewster is not a defendant in this case, but was a board member of the TCPFA during part of Bjorklund's tenure as CEO.

A major issue developing during Bjorklund's tenure was the matter of rent payments owed to the TCPFA by the Big Splash Water Park.  Rent checks for Big Splash allegedly were held without being cashed for significant periods of time.   Bjorklund alleges that he was fired over allegations that he had mishandled the Big Splash checks and that entity's account with the County.  [Dkt. No. 2 at ¶¶ 16-19].  Bjorklund alleges that TCPFA member Randi Miller directed him to get the Big Splash account "off the radar screen."  [*Id.* at ¶ 17].  In a recent affidavit, Bjorklund states that Jerry Murphy, who at the time was a partner in Big Splash, asked Bjorklund not to cash a Big Splash rent check.  Bjorklund states that he discussed the issue with Brewster and that Brewster told him to hold the Big Splash check and that Brewster would clear this action with the Board.  [Dkt. No. 61-3 at ¶ 6].  Brewster denies that this conversation ever occurred.  [Dkt. No. 61-1 at pp. 10-11].

On July 1, 2008 – after Brewster had left the TCPFA – Bjorklund appeared at an executive session meeting of the TCPFA to discuss his employment situation and the Big Splash financial matter.  Bjorklund says he had two conversations with Brewster

that day and several after his termination.  He claims attorney-client privilege on these conversations.

*Applicable Legal Standard*

This case presents a federal question under 42 U.S.C. § 1983; thus, federal common law applies to the privilege question before us.  *See Sprague v. Thorn Americas, Inc.*, 129 F.3d 1355, 1368-69 (10th Cir. 1997). The burden of establishing the privilege is on the party asserting it.  *In the Matter of Grand Jury Subpoena Duces Tecum Issued on June 9, 1982*, 697 F.2d 277, 279 (10th Cir. 1983).  And this burden must be met "as to specific questions or documents, not by making a blanket claim."  *In re Foster*, 188 F.3d 1259, 1264 (10th Cir. 1999).  Such privileges are strictly construed and accepted "only to the very limited extent that permitting a refusal to testify or excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth."  *Trammel v. United States*, 445 U.S. 40, 50 (1980) (*quoting Elkins v. U.S.*, 364 U.S. 206, 234 (1960) (Frankfurter, J., dissenting)).

Under federal common law, attorney client privilege arises where the following criteria have been met: (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the

3

privilege has been (a) claimed and (b) not waived by the client. *U.S. v. United Shoe Machinery Corp.*, 89 F.Supp. 357, 358 -359 (D.Mass. 1950). *See also Coorstek, Inc. v. Reiber*, 2010 WL 1332845, at *4 (D.Colo. April 5, 2010)).

For an attorney-client relationship to exist, the parties need not have executed a formal contract. *Westinghouse Elec. Corp. v. Kerr-McGee Corp.*, 580 F.2d 1311, 1317 (7th Cir. ), *cert. denied*, 439 U.S. 955 (1978). Nor must there have been payment of fees. *Id.* at 1317, n.6. The purported client must show that (1) he submitted confidential material to a lawyer, and (2) that he did so with the reasonable belief that the lawyer was acting as his attorney. *Hall v. Martin*, 1999 WL 760213, at *4 (D.Kan. Aug. 20, 1999) (*citing Nelson v. Green Builders, Inc.*, 823 F. Supp. 1439, 1444 (E.D.Wis. 1993)). In determining whether attorney-client privilege applies, the court may consider the party's subjective belief that an attorney-client relationship existed; however, this belief must be objectively reasonable. *Nelson*, 823 F. Supp. at 1445; *United States v. Okun*, 2008 WL 2385253, *2 (4th Cir. 2008). A subjective belief alone is not sufficient. *Cole v. Ruidoso Municipal Schools*, 43 F.3d 1373, 1384 (10th Cir. 1994).

Finally, if an attorney-client relationship exists, the privilege may be waived where the actions of the attorney are placed in issue. Edna S. Epstein, The Attorney-Client Privilege and the World-Product Doctrine, vol. 1 at 552-67 (5th ed.).

*Discussion*

At a hearing on Nov. 5, 2010, it was conceded that there is no concrete indicia of an attorney-client relationship between Bjorklund and Brewster: There is no contract or retainer; there are no billing statements or payments. Moreover, while Bjorklund insists

4

that Brewster was his attorney during 2006-08, Brewster denies that he was ever
Bjorklund's attorney, or that he ever gave him legal advice as his attorney.  Thus,
whether Bjorklund can claim attorney-client privilege as to his conversations with
Brewster depends on whether it is objectively reasonable that he would have believed
Brewster was his lawyer.

Bjorklund has offered few specifics about the purported attorney-client
relationship with Brewster.  At his deposition, he stated that Brewster became his
attorney "When I began asking him for advice and counsel."  [Dkt. No. 58-1, p. 93, lines
2-4].  Asked when that began, he stated, "Quite sometime ago"[*Id.* at lines 5-6], but
could not provide a specific date.  [*Id.* at lines 7-11].  He stated that he had sought
Brewster's advice "on a variety of issues" [*Id.* at p. 95, lines 8-13], that "[h]ad the
potential of being legal" [*Id.* at lines 21-24], similar to the way "[a] cloud has a potential
of raining."  [*Id.* at p. 96, lines 4-10].

On the day of his termination, Bjorklund understood that the TCPFA would be
discussing his employment and the Big Splash account.  [Dkt. No. 58-1 at 169, lines 18-
22].  Before he was called into the executive session meeting, Bjorklund called Brewster.
[*Id.* at 187, lines 11-13].  Bjorklund testified at the Nov. 5 hearing that he'd had perhaps
"a half dozen" conversations with Brewster following his termination.  Prior to his
termination, Bjorklund said he had met with Brewster at Brewster's office "dozens of
times."  He said Brewster never told him that he could not talk to him about certain
matters.  Bjorklund testified that following his termination Brewster suggested lawyers

who could represent him in the employment matter.  Bjorklund said he understood that Brewster "could not represent me in failing a lawsuit," but said he did not know why.

Brewster has testified as follows:

> I never served as Mr. Bjorklund's lawyer.  I didn't agree to be retained at any time on his behalf.  I didn't receive any money for any kind of services.  I didn't write any opinions.  I didn't give any opinions that would be an attorney/client relationship.

[Dkt. No. 58-3, p. 56, lines 16-21].

Elsewhere in his deposition, Brewster stated that "one reason why I would never have served as his lawyer is I had an absolute conflict and I would not have even considered being retained or giving advice in a conflictual (sic) situation, other than maybe friendly or guidance or consoling." [*Id.*, p. 60, line23 – p. 61, line 2].

For ease of analysis, the Court will separate the time of Brewster's alleged attorney-client relationship with Bjorklund based on whether Brewster was on the TCPFA or not.

**(1) 2006-07:  Brewster a Member of the TCPFA.**

In 2006-07, Brewster was a member of the TCPFA – the board that hired Bjorklund and oversaw his job performance.  Starting in January 2007, as CEO of the Fairgrounds, Bjorklund was answerable to the TCPFA – including Brewster.  Reviewing all of the record evidence, the Courts finds that Bjorklund could not reasonably have believed that Brewster was his personal attorney with respect to any Tulsa Fairgrounds business while Brewster was serving on the TCPFA.  Such representation would place Brewster in a clear conflict between his obligations and responsibilities to the public as a

member of a public board and duties to a client.  *E.g.*,  5 Okla.Stat.Ann. Ch. 1, App. 3-A

Rule 1.7(b).

Bjorklund contends that the determination of attorney-client relationship

depends chiefly on the purported client's subjective belief that such a relationship

existed; however, this alone is not sufficient.  Although Bjorklund's subjective belief

may be considered by the Court, that belief alone is not enough to meet his burden to

establish the relationship.  *See Cole v. Ruidoso Mun. Schools*, 43 F.3d at 1384 and cases

cited therein.  Bjorklund's subjective belief must also meet the test of objective

reasonableness.  *Nelson*, 823 F.Supp. at 1445.

Here, Bjorklund is a sophisticated businessman, experienced in operation of

public fairground boards and state fair operations.  He served as director of the

Nebraska State Fair prior to his appointment in Tulsa and was executive director of the

Wisconsin State Fair for seven years before that.  Bjorklund knew that Brewster was a

board member of the TCPFA when he took the Tulsa position.  Under the

circumstances, it is not reasonable that Bjorklund could have reasonably believed he

could have an attorney-client relationship with a member of his supervising board in

relation to TCPFA business.  This would create an open and obvious conflict for both

Brewster and Bjorklund.  Brewster would have been overseeing someone with whom

he had a fiduciary relationship.  Bjorklund would be claiming privilege on

conversations with a member of a public board over matters of public policy and

concern.  An attorney-client relationship under such circumstances is not reasonable.

7

Bjorklund has conceded this point at least with respect to any discussion concerning Big Splash Water Park and its account with the TCPFA.[1]

**(2) 2008 -- :  Brewster No Longer on the TCPFA.**

Brewster's tenure as a member of the TCPFA ended in 2007.  On July 1, 2008, the TCPFA held an executive session meeting at which Bjorklund's handling of the Big Splash checks and account was discussed.  Bjorklund spoke with Brewster twice that day and seeks to protect those conversations as attorney-client privileged.  The Court agains concludes that Bjorklund's belief that Brewster could serve as his attorney in this matter is not reasonable under the facts presented.

Bjorklund understood that a central issue at the July 1, 2008, meeting was his handling of the Big Splash checks and account.  This issue concerned rent checks due from Big Splash in 2006 and 2007 – when Brewster was a member of the TCPFA.  Thus, the discussion between Bjorklund and the TCPFA involved matters that occurred when Brewster was a board member.  Furthermore, Bjorklund has stated under oath that his handling of at least one Big Splash check was directed by Brewster.  [Dkt. No. 61-3, ¶6]. Thus, according to Bjorklund's own recollection of events, at the very least, Brewster was a participant in the events at issue while he was a board member.  Thus, Bjorklund could not have reasonably believed that Brewster could be his personal attorney under

---

[1]     In an Affidavit Bjorklund stated that after his deposition in June 2010, "I learned that my conversation with Clark Brewster regarding a certain check at issue in this case written by Jerry Murphy is not protected by attorney-client privilege."  [Dkt. No. 61-3, ¶5].  At the Nov. 5 hearing, Bjorklund's counsel conceded that a discussion between Bjorklund and a TCPFA board member about board business could not be subject to attorney-client privilege.

such circumstances.  The Court finds that it would not be reasonable to believe privilege would attach to a conversation with Brewster after his departure from the Board if the conversation related to a matter involving the TCPFA while Brewster had been a Board member.

Finally, even if Bjorklund could reasonably have believed Brewster was his attorney for purposes of the termination issue on July 1, 2008, Bjorklund has waived attorney-client privilege by asserting that Brewster had a role in directing the conduct for which he was terminated.  Bjorklund made Brewster an integral part of that controversy by stating that it was Brewster who told him to hold the $68,000 Big Splash check and, further, that Brewster stated he would clear it with the TCPFA.  [Dkt. No. 61-3, ¶6].  Under these circumstances, Bjorklund has placed Brewster's conduct at issue in the litigation.  If Brewster told Bjorklund to handle the Big Splash checks improperly, that will be an issue in this lawsuit.  Evidence on this point will go directly to whether the TCPFA's proffered reasons for Bjorklund's termination were legitimate.  Bjorklund cannot make Brewster a witness in that dispute and then assert attorney-client privilege on conversations concerning that very topic.

Under the circumstances presented here, the Court finds that it is not reasonable for Bjorklund to have believed Brewster could have been his attorney while he served on the TCPFA or with respect to TCPFA business that occurred while Brewster was on the board.  Accordingly, the Motion to Compel is **GRANTED**.

IT IS SO ORDERED this 12th day of November 2010.

Paul J. Cleary
United States Magistrate Judge